AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Maryland

☑ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

4:48 pm, Sep 09 2021

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.   1:21-mj-02533-JMC |
| JONATHAN GRAY NEWELL | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   September 28, 2014   in the county of   Caroline   in the
_____ District of   Maryland  , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2251(a) | Sexual Exploitation of a Child |

This criminal complaint is based on these facts:
See affidavit.

☑ Continued on the attached sheet.

*Rachel S Corn*
*Complainant's signature*

Rachel Corn, Special Agent FBI
*Printed name and title*

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:   September 9, 2021
*Judge's signature*

City and state:   Baltimore, Maryland   Hon. J. Mark Coulson U.S. Magistrate Judge
*Printed name and title*



1:21-mj-02533-JMC

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A COMPLAINT

I, Rachel S. Corn, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and state as follows:

1.	I have been a SA with the FBI since May 2006.  Since September 2006, I have primarily investigated federal violations concerning child pornography and the sexual exploitation of children.  I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations.  Specifically, I have received FBI Crimes Against Children training, FBI Innocent Images Online Undercover training, and FBI Peer-to-Peer Network Online Investigation training.  I have participated in the execution of numerous search warrants, of which the majority have involved child exploitation and/or child pornography offenses.  Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of 18 U.S.C. §§ 2252A and 2422 involving child exploitation offenses.  I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts, and other online communication accounts related to child exploitation and/or child pornography. In the course of my employment with the FBI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2.	As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. This affidavit is made in support of a criminal complaint and arrest warrant for Jonathan Gray Newell, born in 1970, for violation of 18 U.S.C. § 2251(a) (Sexual Exploitation of a Child).

4. The statements in this affidavit are based in part on information and reports provided by the Maryland State Police, Special Agents of the FBI, and on my experience and background as a SA of the FBI. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

## PROBABLE CAUSE

5. On July 23, 2021, investigators from the Maryland State Police responded to a cabin located in Fishing Creek, Maryland, regarding a minor who located a video camera in the bathroom of the cabin. After arriving at the cabin, investigators interviewed two minor males.

6. The first minor male, Minor Victim 1, born in 2006, provided the following information: On July 22, 2021, the two minor males spent the night with Jonathan Gray Newell ("Newell"), at Newell's cabin in Fishing Creek, Maryland. On the morning of July 23, 2021, Minor Victim 1 entered the bathroom adjacent to Newell's bedroom to shower. After undressing, Minor Victim 1 observed what appeared to be a camera. The camera was on a shelf in the corner of the bathroom, inside a small black utility crate. The lens of the camera was facing the shower. Minor Victim 1 examined the camera and took photographs of it with his cell phone. Minor Victim 1 observed a green blinking light on the camera. Minor Victim 1 placed the camera back into its original position and exited the bathroom.



## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A COMPLAINT

I, Rachel S. Corn, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and state as follows:

1. I have been a SA with the FBI since May 2006. Since September 2006, I have primarily investigated federal violations concerning child pornography and the sexual exploitation of children. I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations. Specifically, I have received FBI Crimes Against Children training, FBI Innocent Images Online Undercover training, and FBI Peer-to-Peer Network Online Investigation training. I have participated in the execution of numerous search warrants, of which the majority have involved child exploitation and/or child pornography offenses. Many of the child exploitation and/or child pornography search warrants resulted in the seizure of computers, cell phones, magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws, including various sections of 18 U.S.C. §§ 2252A and 2422 involving child exploitation offenses. I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts, and other online communication accounts related to child exploitation and/or child pornography. In the course of my employment with the FBI, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. This affidavit is made in support of a criminal complaint and arrest warrant for Jonathan Gray Newell, born in 1970, for violation of 18 U.S.C. § 2251(a) (Sexual Exploitation of a Child).

4. The statements in this affidavit are based in part on information and reports provided by the Maryland State Police, Special Agents of the FBI, and on my experience and background as a SA of the FBI. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

## PROBABLE CAUSE

5. On July 23, 2021, investigators from the Maryland State Police responded to a cabin located in Fishing Creek, Maryland, regarding a minor who located a video camera in the bathroom of the cabin. After arriving at the cabin, investigators interviewed two minor males.

6. The first minor male, Minor Victim 1, born in 2006, provided the following information: On July 22, 2021, the two minor males spent the night with Jonathan Gray Newell ("Newell"), at Newell's cabin in Fishing Creek, Maryland. On the morning of July 23, 2021, Minor Victim 1 entered the bathroom adjacent to Newell's bedroom to shower. After undressing, Minor Victim 1 observed what appeared to be a camera. The camera was on a shelf in the corner of the bathroom, inside a small black utility crate. The lens of the camera was facing the shower. Minor Victim 1 examined the camera and took photographs of it with his cell phone. Minor Victim 1 observed a green blinking light on the camera. Minor Victim 1 placed the camera back into its original position and exited the bathroom.

7. Minor Victim 1 then went to find Minor Victim 2, born in 2007, to tell him about the camera. Shortly after Minor Victim 1 exited the bathroom, Minor Victim 1 observed Newell enter the bathroom, then exit the bathroom carrying miscellaneous items, and then proceed directly to his (Newell's) bedroom. Minor Victim 1 and Minor Victim 2 then reentered the bathroom so Minor Victim 1 could show Minor Victim 2 the camera. Once inside the bathroom, Minor Victim 1 observed that the camera was no longer in the bathroom. Following the above events, Newell, Minor Victim 1, and Minor Victim 2 left the cabin and went on Newell's boat. While on the boat, Minor Victim 1 and Minor Victim 2 each used their cell phones to inform their parents about the camera in the bathroom. Their parents then contacted law enforcement.

8. Minor Victim 1 further advised that another adult male and four minor males also stayed the night at the cabin. On July 23, 2021, when Minor Victim 1 woke up, the five males had already left the cabin.

9. Investigators arrived at Newell's cabin on the same day; Newell was present when the investigators arrived. Newell waived his *Miranda* rights and consented to an interview. Newell advised that the cabin had 10 "members" that had access to the cabin and that the members "come and go." Newell advised the members did not keep a log of the people who accessed the cabin. Newell denied placing a camera in the bathroom and denied noticing a camera in the bathroom. When presented with the following timeline of events: Minor Victim 1 used the bathroom and saw a camera, Newell used the bathroom, then both minor males entered the bathroom and the camera was no longer there – Newell replied, "Like I said, there was six other people here." Newell was presented with a picture of the camera and Newell stated he had never seen the camera before.

10. After the interview concluded, Newell was permitted to go to his bedroom to plug his cell phone into a charger and make phone calls. Newell plugged his phone into a phone charger that was plugged into the wall outlet directly next to the side of his bed. Newell sat on the bed at the head of the bed as he plugged his phone into the wall. While he was on the phone, investigators observed Newell reach under the bed with his right hand on more than one occasion. Each time Newell reached under the bed, an investigator walked around the bed to get a better view of Newell. When the investigator got to Newell, Newell would push the phone charger into the wall outlet. At the time, the investigator believed Newell was holding the charger into the wall due to the short length of the cord and poor electrical connection. As this conduct continued, the investigator noticed Newell reach directly under the bed below the outlet. Newell made these movements for a few seconds and then stretched his lower back by leaning forward. A few moments later, the investigator observed Newell's right hand closed in a fist. Newell was still talking on the phone, holding the phone with his left hand to his left ear. Shortly after the investigator noticed Newell's right hand in a closed fist, Newell placed his right fist to his mouth and covered the bottom of his phone and mouth and began talking quietly. A few minutes later, the investigator heard a loud, distinguishable, "crunch," sound from the area of Newell's mouth. After another minute or two, the investigator heard the same "crunch" again from Newell's mouth, followed by Newell immediately reaching for and drinking from a cup located on his dresser.

11. Newell was asked to leave the bedroom and Newell ended his phone call. After Newell walked away from the bed, the investigator observed what appeared to be an object under the bed similar to the picture of the camera taken by Minor Victim 1. The object, a black box, was sitting on top of a white blanket or towel.

12. Newell was with a second investigator in the living area. Newell asked the second investigator if he could obtain his cell phone charger from his bedroom. Newell walked into the bedroom and knelt down and removed a pair of shorts and a t-shirt from under the bed. Newell then removed a white blanket from under the bed, stood up, turned around, and produced a small black rectangular box to the second investigator. Newell advised the second investigator something similar to: "This is what you are looking for," and placed the box on top of the bedroom dresser. The box can be described as a black rectangular box with "Zetta," and "Made in China" inscribed on the back, with a slot for an SD card, and what appears to be a camera lens. The SD card slot was empty. The device appeared to be the same device Minor Victim 1 photographed in the bathroom earlier that morning.

13. On July 24, 2021, investigators escorted Newell to a nearby hospital with a warrant to obtain CT scans of his chest & abdomen/pelvis. The "After Visit Summary" included the following:

> "IMPRESSION: 18 mm linear possibly metallic foreign body within the small bowel."
>
> "Diagnosis: Foreign Body Ingestion."

14. To date, seven additional males, all born between 2002 and 2007, have been interviewed by investigators regarding their relationship with Newell. Most of the males have known Newell for years, some since elementary school. Although one of the males is currently 18, all of the males described being at Newell's residence and/or cabin on at least one occasion. The males were minors when they were at Newell's residence and/or cabin. The males described showering at Newell's residence and/or cabin. Nearly all of the males stated that while in the bathroom, Newell checked their bodies for ticks. At least two of the males stated they were naked when Newell checked them for ticks – one stated that he moved his own genitalia for Newell to

look for ticks, and the other initially did not recall if Newell touched his genitalia, but later stated that Newell once or twice moved the minor's genitalia to look for ticks.

15.  State search warrants were executed to include searches of Newell's cabin, residence (Henderson, Maryland), truck, boat, and office. Numerous digital devices were seized from the various locations. The forensic examination of the digital devices is currently ongoing.

16.  Among other digital items, a Toshiba external hard drive, serial number 83T5T81VTTT1, made in the Philippines, was seized from a safe located in the den of Newell's residence. A preliminary analysis of the Toshiba external hard drive revealed numerous videos of minor males showering. In some of the videos, Newell is seen setting up the camera in the bathroom.

17.  The Toshiba external hard drive contained a folder titled, "edited swim", which contained fifteen subfolders, each titled with two or three letters. Inside each of the subfolders were videos of minor males in a bathroom, disrobing and showering.

18.  One of the subfolders contained videos depicting Minor Victim 3, and at least one video depicting Minor Victim 3 and Minor Victim 4 together. The title of the subfolder was Minor Victim 3's initials. Minor Victim 3, born in 2004, is one of the seven additional males referenced above.[1] Minor Victim 3 stated that he has known Newell since he was in kindergarten or the first grade. Minor Victim 3 also stated that he showered at both Newell's residence and cabin, and that Newell checked him for ticks. Two of the videos from the subfolder titled with Minor Victim 3's initials include:

    a.  A video titled, "vlc-record-2014-09-28-21h54m14s-MVI_0106.MOV.avi". The video is five minutes and six seconds in duration, and depicts Minor Victim 4, naked, exiting

---

[1] One of the investigators viewed videos from inside the subfolder titled with Minor Victim 3's initials. The same investigator also interviewed Minor Victim 3 and viewed a screenshot of the prepubescent male from the video described in paragraph 18a. The investigator recognized the background of the image as a bathroom from Newell's residence in Henderson, Maryland, and indicated that the screenshot appears to be Minor Victim 3.

the shower and dry himself with a towel. The video depicts Minor Victim 4 from his knees to his chest, with his genitalia exposed. At approximately 40 seconds, Newell enters the bathroom and stands facing Minor Victim 4. Their heads are out of the view of the camera, however at some point Minor Victim 4 leans over, consistent with showing his head to Newell. At approximately one minute and twenty seconds, Minor Victim 3, a clothed prepubescent male, enters the bathroom. As the video continues, Newell appears to run his hands through Minor Victim 3's hair. Minor Victim 3's shirt is removed by a person other than Minor Victim 3, however the video does not depict who removes the shirt. At approximately three minutes and thirty seconds, Minor Victim 4 exits the bathroom, and Minor Victim 3 removes his underwear and is fully naked. Newell kneels in front of Minor Victim 3 and says, "Lift that up," pointing toward Minor Victim 3's genitalia. Minor Victim 3 lifts his genitalia. Newell then tells Minor Victim 3 to turn around and Newell uses his hands to spread Minor Victim 3's buttocks. Newell then uses his hand to tap Minor Victim 3's right buttock. Minor Victim 3 then bends over. Newell places his right hand on Minor Victim 3's back as Minor Victim 3 is bending over. Newell then runs his right hand down Minor Victim 3's legs. Minor Victim 3 eventually enters the shower.

      b.    A video titled, "vlc-record-2014-09-28-21h59m34s-MVI_0106.MOV-.avi". The video is fifty-one seconds in duration, and depicts Minor Victim 3 exiting the same shower. The video depicts Minor Victim 3 naked from his knees to his neck, with his genitalia exposed, as he dries himself with a towel.

## CONCLUSION

19.    Based upon the foregoing information set forth in this application, I respectfully submit that there is probable cause to believe that Jonathan Gray Newell violated 18 U.S.C. § 2251(a) (Sexual Exploitation of a Child).

*Rachel S Corn*
Special Agent Rachel S. Corn
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4 this __9th__ of September 2021.

_____
HONORABLE J. MARK COULSON
UNITED STATES MAGISTRATE JUDGE



7